---

## Case No. 10,465.

### In re O'HARA.

[8 Am. Law Reg. (N. S.) 113; 1 Am. Law T. Rep. Bankr. 123; 15 Pittsb. Leg. J. 134; 3 Pittsb. Rep. 111.]

District Court, W. D. Pennsylvania. Dec. 15. 1868.

BANKRUPTCY — COSTS—COMPENSATION OF CREDITORS' COUNSEL — CONTRIBUTION FROM OTHER CREDITORS.

1. Compensation of counsel for petitioning creditors in involuntary bankruptcy is taxable as part of the costs of the proceedings, and payable out of the fund realized.

[Cited in Ex parte Jaffray, Case No. 7,170; Re King, Id. 7,780.]

2. But the principle does not extend to give petitioning creditors a right to contribution from the other creditors in case of failure to realize a sufficient fund to pay expenses and counsel fees.

In bankruptcy. Counsel for the petitioning creditors presented to the register a claim of $1,500 for compensation for their services as counsel, which they asked to have taxed in their favor as costs in the

proceedings, to be paid out of the funds in the hands of the assignees. At the time of presenting said claim, they also made proof that notice of their intention to do so had been served upon the bankrupt and the assignees. The bankrupt neither appeared in person, nor was he represented by counsel. The assignees appeared and filed a written objection to the allowance of said claim, on the ground that no provision therefor is made either in the bankrupt act [of 1867 (14 Stat. 517)] or general orders; admitting, however, the extent of the services rendered, and the reasonableness of the charge threrefor.

By SAMUEL HARPER, Register:

A question similar to this one has been decided in favor of allowing compensation to the petitioning creditors' counsel by Judge Bryan, of the United States district court for South Carolina. In re Williams [Case No. 17,704]. It is true that the decision in that matter rested on an analogy drawn from the practice in the courts of that state, in chancery, in allowing counsel fees on a creditors' bill against the insolvent estates of deceased persons, yet the learned judge gives other equitable and just reasons for the allowance. "There is," said he, "a very cogent reason why any single creditor should feel at liberty to prosecute without the fear of having his claim swallowed up by the expenses of the suit—even when successful. The act contemplates fraud as the ground of prosecution in a great variety of forms. Instant action by one creditor in a precise locality, separated from all other creditors, and without opportunity of counselling with them, is necessary for the efficient administration of the law, and the protection of the whole body of creditors. To wait for time for consultation would, in numerous instances, be to lose the golden moment, and let the fraudulent debtor go free."

In that case it was remarked that, "in contemplation of law, so far as his property is concerned, the bankrupt is dead. He is no longer entitled to control over it, or the distribution of it. It is assets in the possession of the court, to be administered by the agency of an assignee, for the equal benefit of all creditors—not preferred and protected by liens—and such lien-creditors secured in their liens, as in the case of an insolvent deceased's estate." In the present case, this condition of things exists as the result of the proceedings instituted, and (after an unusually severe struggle) successfully prosecuted by the petitioning creditors; and although the bankrupt act and general orders are silent upon the subject, I think it is within the equity of the court to say whether the general creditors shall reap the benefit and share in the burdens, or whether they shall be entirely exempt from the latter, and the expense of preparing the petition and its prosecution to the decree of bankruptcy be thrown upon the petitioning creditors alone.

To say the latter, is to say that the involuntary feature of the bankrupt law is a delusion and a fraud. A decision that casts such a pecuniary burden upon the creditor who rescues the property of a fraudulent debtor for the benefit of all his creditors, will virtually amount to the abrogation of the involuntary provisions, for it will deter individual creditors from instituting proceedings against their debtors, which are almost sure to involve them in still greater pecuniary loss. The debt of the petitioning creditors in this matter, as proved before the register, amounts to $1511.80. If the burden of this claim should be thrown on them, and the bankrupt's estate should pay all debts in full, it follows that the petitioning creditors would realize out of the estate eleven dollars and eighty cents, or considerably less than one per cent., while the other creditors would realize one hundred per cent.

It is no answer to this position to say that the creditors of a debtor can consult together before proceedings are instituted, and agree to equally bear the necessary expenses. I have no knowledge of any bankruptcy matter all the creditors in which could be got together in time to prevent the accomplishment of the debtor's purpose. It is difficult to follow the most kinds of property after the possession has passed to others; and the hope of recovering the value of such property from those who may have aided the debtor in his fraudulent transactions, affords but little encouragement for the institution of legal proceedings necessarily expensive. The suggestion that the creditors may or should consult before filing the petition, and agree to bear the expense jointly, is, however, a recognition of the equity of this claim. To allow this claim is merely to say—after the successful prosecution of the petition—what the creditors themselves would almost universally say before the filing of the petition. And there is more reason and justice in saying it now, because by the prompt action of the creditor who first learns of the fraudulent actions of the debtor, much more of his property is rescued for the benefit of the creditors than would be the case if the proceedings were delayed until the creditors could be got together for consultation. The summary processes of the bankrupt law encourage prompt action. Its involuntary provisions were intended to be efficient in the punishment of dishonest debtors, and the distribution of their property among their creditors. That efficiency would be entirely neutralized if the petitioning creditors, instead of acquiring advantages by their proceedings, are to incur heavy pecuniary burdens.

The analogy in the South Carolina case I have cited, does not, however, exist in Pennsylvania, but I do not think it necessary that it should. I base my opinion on the equitable rule that he who shares in a benefit should contribute a like share to the ex-

penses incurred in realizing the benefit. The bankrupt law is intended to be an uniform system. If it be just and equitable in South Carolina to tax the compensation of the counsel for the petitioning creditor as part of the costs, as I believe it is, it is just and equitable to do the like in Pennsylvania.·

The case Ex parte Plitt [Case No. 11.228] is somewhat in point. One Mathias Aspden died in London, 1824, leaving an immense personal estate to his "heir at law" or "lawful heir." Litigation followed to determine who was entitled to the estate, and occupied the attention of the federal courts from 1826 to 1852. Several of the most eminent counsel in the country were concerned in it; and the question presented in Ex parte Plitt [supra] in relation to counsel fees was raised by counsel, who, owing to the complex character of the litigation, were instrumental in securing the fund for the successful claimants, though in the end they represented conflicting interests. Judge Kane, in the absence of Judge Grier, delivered the opinion of the circuit court. I quote as follows: "Over and above the fees of office, this fund is subject to three classes of charge: 1st. The necessary expenses of ascertaining it, and reducing it into possession. 2d. A reasonable compensation for its safe keeping, and the supervision of its interests. 3d. The expenses of ascertaining the proper distributees, and making distribution among them." In the first class he included the expenses paid by an unsuccessful claimant for a commission to England, and $1000 as compensation for services in securing a large amount of money to the estate. In the third class he included the claims for counsel fees, and said: "We have no doubt of the power of the court, where a fund is within its control, as in the case before us, to take care of the rights of the solicitors who have claims against it, whether for their costs, technically speaking, or their reasonable counsel fees." Again: "Now, it is the familiar rule of courts of equity, where a suit has been instituted and carried on for the benefit of many, that all who come in to avail themselves of the decree shall bear their just proportion of the charges." The parallel is sufficiently clear to need no application to the present matter.

Of course this decision would not give to the petitioning creditors the right to enforce contribution from the other creditors in case of failure. It is only when success follows his petition, and there are assets to be distributed, that they can be called on to share the expense. The petitioning creditor takes these chances; and should he fail to obtain a decree of bankruptcy, or after decree fail to discover assets, he must bear the burden alone. The only general principle ruled is, that the compensation of the counsel for the petitioning creditor is taxable as costs in cases of involuntary bankruptcy. No general rule can be laid down as to the amount

of compensation. That is a subject within the discretion of the court, and cannot be determined by an agreement between the parties. The practice observed in this case is approved, and will be a precedent to govern in all like matters.

McCANDLESS, District Judge. As the solution of this question does not depend upon any statutory provision, and, as a precedent, is of consequence to the profession and the public, before concurring with the register, I have given to the subject mature consideration. I have arrived at the conclusion that his opinion is based on sound principles, and sustained by sufficient authority. The fund is within the control of the court, and it is our province so to administer it as to do exact justice to all the creditors. We have judicial knowledge of the professional services rendered by the able counsel of the petitioning creditors, by whose exertions the fund has been realized; and, as we consider the fee charged reasonable, it is proper that their compensation, as one of the incidental expenses, should be deducted before distribution. The decision of the register is affirmed.